UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARK RUSHION,

                Petitioner,

            -against-

LUIS MARSHALL, Superintendent,
Sing Sing Correctional Facility,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**

No. 07-CV-2093 (SLT)

**TOWNES, United States District Judge:**

On May 12, 2003, petitioner Mark Rushion ("Petitioner") was convicted in the Supreme Court of the State of New York, Kings County, of murder in the second degree in connection with the March 28, 2001, shooting of Ivan Martinez. He now petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## FACTS

On March 28, 2001, Ivan Martinez, a seventeen-year-old pizza delivery man, was robbed and shot in the head with a handgun outside a building in East New York, Brooklyn. Petitioner and three other people, Samson Nylander, Mavis Brown, and Shalina Martin, were arrested in connection with the shooting.[1]

In the early morning of April 3, 2001, Petitioner was questioned about the crime at the 75th Precinct. Petitioner was first questioned by Detective Joseph Patton, who began the interrogation by reading Petitioner his *Miranda* rights. Although Petitioner told the detective that

---

[1] Nylander also brought a habeas petition pursuant to 28 U.S.C. § 2254 challenging his second-degree murder conviction. That petition was denied in a Memorandum and Order dated March 30, 2010. *See Nylander v. Smith*, No. 07-CV-0457, 2010 WL 1292297 (E.D.N.Y. Mar. 30, 2010).

he understood his rights, he refused to sign the *Miranda* card (H. 229-30, 267-69, 272).[2] He nonetheless spoke to Detective Patton, initially denying any knowledge of the incident (H. 232).

Detective Patton continued to question Petitioner and, after about two hours, Petitioner changed his story (H. 233). Petitioner claimed that Brown had proposed robbing Martinez and, over Petitioner's objections, Brown and Martin exited the car in which they were all sitting and began to "tussle" with Martinez. Thereafter, Petitioner heard, but did not see, a gunshot. According to Petitioner, Brown and Martin then returned to the car, where they told Petitioner that they had "pop[ped]" the delivery man because he had seen their faces (H. 240).

Detective Patton reduced Petitioner's statement to writing at around 5:15 a.m. About three hours later, Petitioner made a videotaped statement to an Assistant District Attorney ("ADA"), Lawrence Fredella. Prior to taking his statement, ADA Fredella read Petitioner his *Miranda* rights for a second time. Petitioner responded ambiguously when asked whether he understood that he had a right to speak to an attorney before answering any questions. The ADA then re-read Petitioner his rights and Petitioner inquired whether, if he proceeded to talk without a lawyer now, he could speak to a lawyer later. The ADA explained that the Petitioner could speak to an attorney in the future even if he began talking without one. Petitioner appeared to be satisfied with this response, and the ADA re-read Petitioner his rights. He answered, "yes," to all of the *Miranda* questions and affirmatively stated that he waived his right to counsel. Petitioner then proceeded to talk without a lawyer, saying that "the truth will come out." (People's Exhibit 9.)

---

[2] Numbers in parentheses preceded by "H" denote pages in the transcript of the pre-trial suppression hearing.

2

In the first videotaped statement, Petitioner provided an exculpatory description of the events of March 28, 2001, similar to the statement he had made to Detective Patton. Petitioner stated that he unsuccessfully tried to convince Martin and Brown not to rob Martinez and heard a shot, but did not witness the shooting. (People's Exhibit 8.) Sometime after this first videotaped statement, Petitioner was subjected to a polygraph examination by Detective Diego Rivera. After Detective Rivera informed Petitioner that he had failed the examination and that Detective Rivera believed that he was responsible for firing the fatal shot, Petitioner admitted to shooting Martinez. However, Petitioner insisted that the shooting was unintentional, stating that he "just wanted to scare" Martinez by pointing the gun at him. Petitioner claimed that he "didn't want to hurt nobody," and that he thought that the "the safety was on" when the gun "went off." (People's Exhibit 9.)

Later on that same day, around 2:00 p.m., Petitioner gave a second videotaped statement to ADA Fredella. The ADA read Petitioner his *Miranda* rights yet again, and Petitioner acknowledged that he understood them. Petitioner then gave a statement which was largely consistent with the one he had given to Detective Rivera.

*Suppression Hearing*

Before trial, Petitioner moved to suppress the two videotaped statements he had given to the ADA. He argued that the first videotape should be suppressed because he did not waive his right to an attorney, and that the second videotape should be suppressed because his statement was involuntary, since he had been deprived of sleep and given nothing to eat throughout his questioning. The hearing judge rejected these arguments, finding that Petitioner had been read his rights on at least three occasions and had waived them in each instance. In addition, the hearing

3

judge found no credible evidence suggesting that Petitioner's statements were "anything less than voluntary." Decision and Order of Justice Plummer E. Lott, dated Dec. 10, 2002, at 16.

*Trial*

Petitioner proceeded to trial before Justice Lott, but the jury failed to reach a unanimous verdict and that trial ended in a mistrial. At the retrial, Martin was the only eyewitness to testify regarding Martinez's murder. Martin testified that on the night of March 28, 2001, she was smoking marijuana in Nylander's car with Nylander, Petitioner, and Brown. When Brown mentioned that she was hungry, Nyalnder exited his car, opened the trunk, and returned with a gun. He gave the gun to Petitioner, who placed it in the glove compartment. As Nylander drove towards East New York, Brown noticed Ivan Martinez, a pizza delivery man, who had just exited an apartment building. Petitioner told Brown and Martin to rob Martinez, and Petitioner took the gun out of the glove compartment and gave it to Nylander. Nylander attempted to hand it to Brown and Martin, but they said that they did not need it, and Petitioner put the gun back in the glove compartment.

According to Martin, she and Brown then exited the vehicle and approached Martinez. When Martin ran up to Martinez, he pushed her and she fell. Brown then put him into a headlock, and Martin went through his pockets and grabbed his wallet. According to Martin, Petitioner got out of the car and pointed the gun from the glove compartment at Martinez and said he "was gonna shoot him" (704).[3] Brown asked, "Shoot him for what?" Petitioner replied, "Because he saw our faces" (705). Petitioner then shot him in the head, and Martinez fell to the

---

[3] Numbers in parentheses denote pages in the transcript of the second trial.

4

ground. Petitioner was standing about one or two feet away from Martinez when he fired the gun.

Detective Joseph Patton, who had conducted the initial interrogation of Petitioner, also testified for the prosecution. He stated, *inter alia*, that Petitioner gave his inculpatory videotaped statement after being given a polygraph examination. During cross-examination, defense counsel sought to elicit testimony from the detective regarding whether Detective Rivera, who had administered the polygraph test to Petitioner, had ever been suspended. Although Detective Rivera had, in fact, been suspended for the improper use of a firearm, the prosecutor objected and the trial court ruled that the defense could not inquire about Detective Rivera's suspension. The trial judge also precluded the defense from calling the person who had suspended the detective as its own witness, ruling that such testimony would be collateral.

In addition to the testimony by Detective Patton, Martin, and several other witnesses, the prosecution introduced Petitioner's incriminating videotaped statement. At the conclusion of the People's case, defense counsel moved "to have the charges dismissed . . . on the grounds that the People have not established a prima facie case as to each and every element of the crime charged" (771). After the motion was denied, defense counsel made another motion, stating:

> And assuming I rest on the record, my motion after the defendant's case, your Honor, is to have all the charges dismissed on the grounds that the People have not proven beyond a reasonable doubt as a matter of law each and every one of the elements charged in the indictment

(771). The trial court denied this motion as well.

Petitioner did not testify at trial. After summations, the trial court charged the jury on the crimes of murder in the first degree, murder in the second degree under both an intentional and a

5

depraved indifference theory, and manslaughter in the second degree. The jury ultimately found Petitioner guilty of murder in the second degree under the depraved indifference theory, but acquitted him of intentional murder.

*Petitioner's Motion to Set Aside the Verdict*

After the verdict, but before sentencing, Petitioner moved the trial court to set aside the verdict, pursuant to New York Criminal Procedure Law § 330.30, on the grounds of newly discovered evidence and the prosecution's failure to disclose exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963). The grounds for Petitioner's motion arose from the trial court's receipt of two pieces of mail after the verdict. The first piece of mail contained a gun and an anonymous letter, which asserted that the gun was the weapon used to kill Martinez and that Martin was the shooter. The second piece of mail was a letter from an individual stating that Martin had admitted to having committed both the robbery and the shooting. The trial court denied Petitioner's § 330 motion, holding that "the papers that were submitted by the defense didn't meet the threshold of submitting a sworn statement relating to the potential testimony of witnesses which they alleged to be the newly discovered evidence." (Sentencing Transcript at 2.) The judge then sentenced Petitioner to twenty-five years to life.

*Direct Appeal*

On direct appeal, Petitioner's appellate counsel challenged the trial court's orders (1) denying Petitioner's motion to suppress his written and videotaped statements, (2) denying his motion to set aside the verdict, (3) excluding any cross-examination regarding the suspension of Detective Rivera, and (4) precluding extrinsic evidence regarding the suspension of Detective

Rivera. Additionally, Petitioner filed a *pro se* supplemental brief in which he argued that his conviction for depraved indifference murder was based on legally insufficient evidence.

The Appellate Division affirmed the trial court's judgment on February 21, 2006. The court determined Petitioner's legal sufficiency claim was unpreserved for appellate review and his remaining claims were without merit. *People v. Rushion*, 26 A.D.3d 448 (N.Y. App. Div. 2006). In regards to the suppression claim, the Appellate Division held that the evidence adduced at the *Huntley* hearing supported the hearing court's conclusion that "the defendant's written and videotaped statements were voluntarily made." The Appellate Division noted that Petitioner was "repeatedly advised of, and knowingly and intelligently waived, his *Miranda* rights." *Id.* In regards to the motion to set aside the verdict, the court held that "[t]he [trial] court providently exercised its discretion in denying the defendant's motion to set aside the verdict." *Id.* The Court of Appeals denied leave to appeal on April 28, 2006. *People v. Rushion*, 6 N.Y.3d 852 (N.Y. 2006).

*Writ of Error Coram Nobis*

On December 18, 2007, Petitioner applied to the Appellate Division, Second Department, for a writ of error coram nobis on the ground of ineffective assistance of appellate counsel. The Appellate Division denied his application on June 10, 2008. *People v. Rushion*, 52 A.D.3d 625 (N.Y. App. Div. 2008). The Court of Appeals denied defendant's application for leave to appeal on September 9, 2008. *People v. Rushion*, 11 N.Y.3d 794 (N.Y. 2008).

*Habeas Corpus Petition in Federal District Court*

Petitioner timely filed the instant habeas petition on May 2, 2007. Petitioner asserted four grounds for relief: (1) that the admission of his videotaped statements during trial violated his

7

constitutional rights; (2) that the trial court's restriction of trial counsel's cross-examination denied Petitioner his constitutional rights; (3) that the denial of Petitioner's motion to set aside the verdict was erroneous; and (4) that the evidence at trial was legally insufficient to support Petitioner's conviction for depraved indifference murder.

On October 24, 2008, following the exhaustion of his petition for a writ of error coram nobis, Petitioner filed an Amended Petition adding claims for ineffective assistance of appellate counsel. Petitioner faulted his appellate counsel for, *inter alia*, (1) failing to raise the argument that Petitioner's trial counsel rendered ineffective assistance of counsel when he neglected to preserve the legal sufficiency argument; and (2) failing to argue that the prosecution improperly changed its theory of the case after Petitioner's conviction.

## DISCUSSION

### A. The *Pro Se* Pleading Standard

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal citations and quotation marks omitted). The same standard applies to *pro se* petitions for federal habeas relief. *See Chang v. United States,* 250 F.3d 79, 86 n. 2 (2d Cir. 2001); *Dunn v. Sears,* 561 F.Supp.2d 444, 451 (S.D.N.Y. 2008); *Charles v. Fischer,* 516 F.Supp.2d 210, 215 (E.D.N.Y. 2007). Accordingly, the petition in this case must be "interpret[ed] to raise the strongest arguments that [it] suggest[s]." *Brownwell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted).

## B. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA")

Under AEDPA's deferential standard, a federal court may not grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Price v. Vincent*, 538 U.S. 634, 639-40 (2003). A federal habeas court may not issue a writ simply because it decides that the state court applied Supreme Court precedent incorrectly. *Price*, 538 U.S. at 641. Instead, as the Supreme Court has stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ [only] if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Henry v. Poole*, 409 F.3d 48, 67-68 (2d Cir. 2005); *Cotto v. Herbert*, 331 F.3d 217, 248 (2d Cir. 2003); *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001).

### C. Petitioner's Constitutional Rights Were Not Violated by the Admission of Petitioner's Statements

The first argument raised in Petitioner's initial petition challenges the trial court's denial of his motion to suppress his videotaped statements. Petitioner implies that he invoked his right

to counsel prior to his first videotaped interview, and states that he "had at most two hour[s of] restless sleep at the precinct" in the 24 hours prior to his videotaped statements.

With respect to the first portion of his argument, there is no factual support for Petitioner's claim that he unequivocally invoked his right to counsel. In one of the videotaped statements, Petitioner ambiguously responded when asked whether he understood that he had a right to speak to an attorney before answering any questions. The ADA then re-read the Petitioner his rights and Petitioner asked whether, if he proceeded to talk without a lawyer, he could subsequently speak to a lawyer. The ADA explained that the Petitioner could speak to an attorney in the future even if he began to talk to him without one. The ADA then re-read the *Miranda* rights to Petitioner, after which Petitioner answered, "yes," to all of the *Miranda* questions and affirmatively stated that he wanted to waive his right to counsel. He then proceeded to talk without a lawyer, saying that "the truth will come out." (People's Exhibit 9.)

The ADA's attempt to clarify the Petitioner's ambiguous response was appropriate and resulted in a clear waiver of Petitioner's right to counsel. *See U.S. v. Plugh*, 576 F.3d 135, 140-41 (2d Cir. 2009); *U.S. v. Ramirez*, 79 F.3d 298, 304-05 (2d Cir. 1996). Petitioner's affirmative responses after his rights were re-read constituted a knowing and intelligent waiver of his right to counsel. His statement that he wanted to speak to a lawyer in the future was not an invocation of his right to counsel at the time of the interview. *See U.S. v. Scarpa*, 897 F.2d 63, 68-70 (2d Cir. 1990); *U.S. v. Jardina*, 747 F.2d 945, 948-49 (5th Cir. 1984), *cert. denied*, 470 U.S. 1058 (1985).

With respect to the second portion of Plaintiff's first argument, there is no factual basis for Petitioner's claim that his statements were the product of coercive or otherwise improper conduct. Accordingly, Petitioner's statements were voluntary and properly admitted at trial.

### D. The Trial Court's Ruling Excluding Testimony Concerning the Suspension of a Detective Did Not Deny Petitioner His Constitutional Rights

In his second argument, Petitioner asserts that his federal constitutional rights were violated when the trial court prohibited defense counsel from cross-examining Detective Patton about Detective Rivera's suspension and from calling a witness to testify regarding the suspension. It is well settled that habeas relief should only be granted based on an evidentiary ruling when the ruling "deprived [the petitioner] of a *fundamentally fair* trial." *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (emphasis in original) (internal quotation marks omitted). Indeed, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). When evidence is excluded, the principal question is whether "*the omitted evidence creates a reasonable doubt that did not otherwise exist.*" *Id.* at 891. (emphasis in original) (quoting *U.S. v. Agurs*, 427 U.S. 97, 112 (1976)); *see also Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000).

Here, the evidence regarding Detective Rivera's suspension did not create a reasonable doubt regarding Petitioner's guilt. Its exclusion, therefore, did not deprive him of a fundamentally fair trial, and did not violate Petitioner's constitutional rights. *See Nova v. Artus*, No. 05 Civ. 8437, 2007 WL 1988456, at *7 (S.D.N.Y. July 6, 2007); *Messa v. Artus*, No. CV-04-2724, 2006 WL 3370438, at *7-9 (E.D.N.Y. Nov. 20, 2006). Accordingly, Petitioner's second argument is without merit.

### E. Petitioner's Claim Based on the Denial of Motion to Set Aside the Verdict Under New York Criminal Procedure Law § 330.30 is Not Cognizable on Habeas Review

In his third argument, Petitioner asserts that the trial court erred in denying his motion

pursuant to New York Criminal Procedure Law § 330.30 to set aside the verdict based on newly discovered evidence. He claims that the motion was "summarily denied without a hearing or written decision." (Amended Petition at 4.)

Petitioner's claim challenging the denial of his motion based on newly discovered evidence is not cognizable on federal habeas review. A claim "based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *see also Corchado v. Rabideau*, 576 F. Supp. 2d 433, 444-45 (W.D.N.Y. Sept. 19, 2008) ("This Court is unable to grant habeas relief on the claim of newly discovered evidence, given the absence of an independent constitutional violation having occurred in [petitioner's] criminal proceeding.") Petitioner has not demonstrated a violation of any independent constitutional right in connection with his motion to set aside the verdict based on newly discovered evidence. Rather, he is alleging procedural defects in his § 330 proceeding.

"Section 330.30 provides a state post-conviction remedy, not a federal right" and "[f]ederal habeas relief . . . is only available to remedy violations of federal law." *Paredes v. Marshall*, No. 07 Civ. 9862, 2008 WL 4937566, at *7 (S.D.N.Y. Nov. 20, 2008); *see also Sparman*, 26 F. Supp. 2d at 468 n.13 ("28 U.S.C. § 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding.") "[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." *Jones v. Duncan*, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001) (internal quotation marks omitted); *see also McGuire v. Walsh*, No. 09-CV-464, 2010 WL

3420629, at *11 (E.D.N.Y. Aug. 26, 2010). Accordingly, Petitioner cannot maintain a due process claim based on the trial court's denial of his motion without a hearing or a written decision. *See Jones*, 162 F. Supp. 2d at 216; *Laraby v. Zon*, No. 04-CV-6264, 2009 WL 3049731, at *10 (W.D.N.Y. Sept. 18, 2009); *Robertson v. Artus*, No. 04-CV-946, 2008 WL 553200, at *10-11 (N.D.N.Y. Feb. 27, 2008); *Dexter v. Artus*, No. 01-CV-237, 2007 WL 963204, *9-10 (N.D.N.Y. Mar. 27, 2007).

### F. Petitioner's Insufficiency Claim Is Procedurally Barred

Petitioner's fourth argument – that the evidence at trial was legally insufficient to support his depraved indifference conviction on appeal – is procedurally barred because it was denied based on an independent and adequate state procedural ground. *See Gardner v. Fisher*, 556 F. Supp. 2d 183 (E.D.N.Y. 2008). The Appellate Division denied this claim, which was raised in Petitioner's *pro se* supplemental brief, on the ground that it was "unpreserved for appellate review." *People v. Rushion*, 26 A.D.3d 448, 448-49 (N.Y. App. Div. 2006). New York's preservation rule, codified in New York Criminal Procedure Law § 470.05, is a "firmly established and regularly followed New York procedural rule." *Garvey v. Duncan*, 485 F.3d 709, 718 (2d Cir. 2007); *see also Richardson v. Greene* 497 F.3d 212, 219 (2d Cir. 2007); *Flores v. Rivera*, No. 06 Civ. 13517, 2009 WL 1110578, at *4 (S.D.N.Y. Apr. 23, 2009); *Stewart v. Greene*, No. 05 Civ. 0566, 2009 WL 4030833 at *14-*15 (S.D.N.Y. Nov. 19, 2009). Thus, noncompliance with the rule precludes federal habeas review absent a finding that application of the rule would be "exorbitant" under the guideposts set forth in *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). It would not be "exorbitant" to apply the preservation rule in this case.

"A federal court can still review a claim that was defaulted on state procedural grounds if

the petitioner can demonstrate 'cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.'" *Gardner v. Fisher*, 556 F. Supp. 2d 183, 193 (E.D.N.Y. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). However, Petitioner has not demonstrated that there was cause for the default or that actual prejudice resulted. The only cause for the default suggested in Petitioner's submissions is ineffective assistance of counsel. Though ineffective assistance of counsel may constitute cause for a default, *see Robinson v. Conway*, No. 06-CV-859, 2010 WL 547170, at *3-4 (W.D.N.Y. Feb. 12, 2010), Petitioner's ineffective assistance argument is without merit for the reasons explained below in Section G.

Petitioner also has not established that he falls within the fundamental miscarriage of justice exception. That exception is limited to "extraordinary case[s], where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623 (1998); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Petitioner has not established actual innocence and cannot invoke the fundamental miscarriage of justice exception. Accordingly, Petitioner's insufficiency claim is procedurally barred. *See King v. Artus*, 259 Fed. Appx. 346, 347 (2d Cir. 2008) (summary order).

### G. Petitioner's Claims of Ineffective Assistance of Appellate Counsel Are Without Merit

Finally, this Court turns to Petitioner's ineffective assistance of appellate counsel argument, which was first raised in his Amended Petition following the Appellate Division's

denial of his motion for a writ of error coram nobis. Though the Supreme Court crafted the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for claims of ineffective assistance of trial counsel, the same standard applies to claims of ineffective assistance of appellate counsel. To establish ineffective assistance in appellate proceedings, a petitioner must demonstrate that "(1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) he was prejudiced by counsel's deficient performance." *Marmolejas v. U.S.*, Nos. 05 Civ. 10693 & 99 Cr. 1048, 2010 WL 3452386, at *6 (S.D.N.Y. Sept. 2, 2010).

"Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). To establish ineffective assistance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). "Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is 'clearly stronger' and more significant than those presented." *Marmolejas*, 2010 WL 3452386, at *6 (quoting *Mayo*, 13 F.3d at 533.) "[R]eviewing courts should not 'second-guess' the reasonable professional judgments of appellate counsel as to the most promising appeal issues." *Fore v. Ercole*, 594 F. Supp. 2d 281, 302 (2009) (quoting *Jones*, 463 U.S. 745, 754 (1983)).

"To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the [appellate court]." *Mayo*, 13 F.2d at 534 (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 226 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694).

Here, Petitioner's ineffective assistance of appellate counsel claims are without merit. Petitioner argues that appellate counsel failed to raise "A Winning Ineffective Assistance of Trial Counsel Claim" based on the fact that trial counsel never moved to dismiss Petitioner's depraved indifference murder conviction on the ground that the evidence was legally insufficient to prove his guilt beyond a reasonable doubt. (Petitioner's Traverse at 4.) On this claim, appellate counsel can only be faulted for not raising an ineffective assistance of trial counsel claim if trial counsel was ineffective. The Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct*." *Strickland*, 466 U.S. at 690 (emphasis added). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*." *Strickland*, 466 U.S. at 689 (1984) (emphasis added). Accordingly, trial counsel's performance in this case must be assessed according to New York law as it existed at the time of Petitioner's trial in January 2003.

Trial counsel's performance was not constitutionally deficient under the *Strickland* standard. At the time of Petitioner's trial, to prove that a defendant was guilty of depraved indifference murder, under *People v. Register*, 60 N.Y.2d 270 (1983), the prosecution was

16

"required to prove that defendant (1) recklessly engaged in conduct (2) which created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life." *Policano v. Herbert*, 7 N.Y.3d 588, 602 (2006). In *People v. Sanchez*, 98 N.Y.2d 373 (2002), the Court reaffirmed the framework set forth in *Register* and held that the "defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish [depraved indifference] murder." *Id.* at 378.

It was not until June 2003 that the Court of Appeals began limiting the scope of depraved indifference murder and the Court's "interpretation of [the fourth element] gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a *mens rea*." *Policano*, 7 N.Y.3d. at 602-03. In July 2006, *Register* was expressly overruled when the Court explicitly held that "depraved indifference to human life is a culpable mental state." *People v. Feingold*, 7 N.Y.3d 288, 294 (2006). However, at the time of the trial in this case, the point-blank shooting of Martinez could have still been viewed as depraved indifference.

Counsel's failure to make an insufficiency objection, therefore, was not objectively unreasonable because such an objection at trial would have been unsuccessful. In reviewing the legal sufficiency of evidence, courts assess "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case, there was sufficient evidence at trial to support a conviction for depraved indifference murder. As noted above, in Petitioner's second videotaped statement, which was played for the

jury, Petitioner stated that he had shot Martinez unintentionally, thinking that the "safety was on" when he pointed the gun at him and placed his finger on the trigger. (People's Exhibit 9.)

The jury was entitled to credit Petitioner's own account of the shooting. There was sufficient evidence at trial that the Petitioner acted with the requisite *mens rea* and that there were "circumstances evincing a depraved indifference to human life." New York Penal Law § 125.25(2). The evidence was not consistent only with intentional murder. Based on Petitioner's statement, there was a reasonable view of the evidence that supported the depraved indifference murder conviction. Trial counsel's performance did not "fall below an objective standard of reasonableness" because an insufficiency objection at trial would have been unsuccessful. *Strickland,* 466 U.S. at 687-88; *see also Seeley v. Perez,* No. 06 Civ.1916, 2008 WL 3992289, at *3 (E.D.N.Y. Aug. 26, 2008). Since trial counsel's performance was not ineffective, Petitioner's appellate counsel was not ineffective for failing to bring an ineffective assistance of trial counsel claim on appeal.

Petitioner also claims that appellate counsel was ineffective for failing to raise the insufficiency argument on appeal. Appellate counsel cannot be faulted for not raising this argument in his appellate brief because it was unpreserved. *See Brito v. Phillips,* 485 F. Supp. 2d 357, 361-64 (E.D.N.Y. 2007). In any event, Petitioner overlooks the fact that the claim was raised on appeal through a *pro se* supplemental appellate brief. The Appellate Division addressed the argument, finding it unpreserved for appellate review. Accordingly, Petitioner could not have suffered any prejudice as a result of counsel's omission of the legal insufficiency argument in the main appellate brief.

The final basis for Petitioner's ineffective assistance of appellate counsel claim is that appellate counsel neglected to argue that the prosecution improperly changed its theory of the case after Petitioner's conviction. Petitioner contends that the prosecution advanced a purely intentional murder theory at trial, but then improperly pursued a theory that Petitioner committed depraved indifference murder after the jury returned its verdict. Petitioner's argument is unexhausted because it was not raised in Petitioner's coram nobis application, but the claim is without merit and is denied on that basis. *See* 28 U.S.C. § 2254(b)(2).

Petitioner was charged with both intentional and depraved indifference murder. The prosecution presented evidence supporting both alternative theories. While the eyewitness testified that the murder was intentional, Petitioner's own statement indicated that it was unintentional. Both charges were submitted to the jury and, when the jury returned a guilty verdict on the depraved indifference charge, the prosecution argued that the evidence was legally sufficient to support the verdict. Petitioner has not demonstrated that any of his federal rights were violated by the prosecution's argument in support of Petitioner's conviction.

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus is denied. A certificate of appealability shall not be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
September 30, 2010